

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

December 16, 2021

**Via ECF**
The Honorable District Judge Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11715

Re: **Narvaez v. Luis Calle Landscaping Inc., et al.**
     **21-CV-1820 (GRB)**

Dear Judge Brown:

Our office represents Juan Jose Narvaez ("Plaintiff" or "Narvaez") and we submit this motion jointly with counsel for Luis Calle Landscaping, Inc. and Luis Calle (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' Settlement Agreement, attached hereto as **Exhibit 1**, were reached following a November 17, 2021 Court-annexed mediation before mediator James A. Brown, Esq.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

### I. The Monetary Terms of the Settlement Agreement are Fair and Reasonable

#### a. The Settlement Amount

The parties agreed to resolve this matter for the amount of $80,000.00 payable to the Plaintiff, inclusive of attorneys' fees, which are addressed below. $40,000.00 of the settlement proceeds will be due within 30 days of Court approval of the Settlement Agreement with the remaining $40,000.00 payable in eight monthly installments of $5,000.00 per month.

b. **Plaintiff's Position**

Plaintiff brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that he was not paid proper overtime wages when he was required to work in excess of forty (40) hours per workweek.

Plaintiff was employed by Defendants as a mason from in or around 2005 until in or around November 2020 at Defendants' landscaping and masonry business located at 6 Franklin Court, Mastic, NY 11950. As the Complaint in this action was filed on April 5, 2021, the relevant statutory period for the Plaintiff's claims in this matter comprises the period from April 2015 through November 2020 (the "relevant statutory period.").

During the relevant statutory period, Plaintiff alleged that he was required to work approximately sixty-six (66) to seventy-seven (77) hours per week during the non-winter months of the year. However, despite regularly working in excess of forty (40) hours per week, Plaintiff alleged that he was compensated with a flat weekly salary that ranged from approximately $1,230.00 to $1,329.00 per week within the relevant statutory period. Plaintiff also alleged that he was entitled to recovery under NYLL 195 for wage notice and wage statement violations.

If the "half-time" rate of overtime pay were to apply to Plaintiff's claims as applied, we believed that Plaintiff was owed approximately $130,000.00 in unpaid overtime wages, assuming Plaintiff could establish that he worked 66-77 hours per week every week for approximately ten months of the year for the entire relevant statutory period and could further establish that he was not compensated at time-and-a-half for any of his overtime work performed.

Although Plaintiff was confident that he could succeed on the above claims at the time of trial, Plaintiff recognized the risks and costs associated with continued litigation. Plaintiff also acknowledged the disputes over the number of hours that Plaintiff worked each week and whether Plaintiff was compensated based on an hourly rate of pay or weekly salary. That these factual disputes would not have been resolved until trial at a much later date in the future favored the decision to reach a resolution early in litigation. Furthermore, Plaintiff considered the financial status of the Defendants in accepting the settlement offer based on our research into the Defendants' assets and ability to pay a larger settlement.

c. **Defendants' Position**

It is Defendants' position that Plaintiff did not work the overtime hours asserted, i.e. 26 to 37 hours per week. Defendants' business is located on the east end of Long Island primarily in the Towns of Southampton, Westhampton and Quogue. These towns put significant restrictions on when Defendants' business can operate. Weekend work is not permitted, and the latest Defendants were allowed to operate was 7:00 pm from April through June. In the summer months the restrictions increased and Defendants' work ended between 5:00 to 6:00 pm. In addition, Defendants' business is seasonal, and there is no work in the industry between December and April.

Based upon Plaintiff's compensation and the hours he actually worked, it was Defendants' position that this was a "half time" case not a "time and a half" case. See e.g. Cronk v. Hudson Valley Roofing & Sheetmetal, No. 20-cv-7131 (KMK) (S.D.N.Y. May 11, 2021) That is, Plaintiff was paid essentially a fixed weekly salary (approximately $1,200), and in the unusual circumstance where he worked in excess of forty hours he was paid an additional half time rate, which sometimes reached $1,700 per week.

Despite the restrictions meted out by the East End Townships, Plaintiff's hours did fluctuate from week to week. Plaintiff received a fixed weekly salary of approximately $1,200.00. The fixed salary of $1,200.00 complied with the minimum wage when distributed over all hours he worked in a week.

Defendants submit that there was a clear mutual understanding that the weekly salary provided compensation, apart from overtime, for all hours worked in a week.

Defendant further submits that the sum agreed upon to settle this matter, at a minimum, is an overtime rate of at least half of his hourly pay.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter for $80,000.00. The parties believe that this amount is reasonable considering the claims and defenses asserted and the fact that the terms of the Settlement Agreement was achieved through the assistance of the Court-annexed mediation program before a qualified neutral. The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff, whether Plaintiff was paid an hourly or weekly rate of pay, and the amounts of pay received by Plaintiffs, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement. As such, the settlement amount represents a fair compromise over the outstanding factual disputes that would not have likely been resolved until the time of trial.

### II.   The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that

have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 7 of the Settlement Agreement ("Release") is appropriately-limited to claims under the FLSA and NYLL and other related wage-and-hour claims that could have been asserted in this litigation. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims completely unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude the parties from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to the Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to the Plaintiff

The parties agreed to a global settlement of $80,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiff will recover $52,615.00, after requested attorneys' fees and reimbursement of expenses.

#### b. Plaintiff's Counsel's Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,078.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on Defendants: $376.00
- the cost of the EDNY Court-annexed mediation: $300.00

Plaintiffs' counsel respectfully requests one-third of the settlement amount less the above expenses ($78,922.00), or $26,307.00 in attorneys' fees, as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $27,385.00.

**Settlement Amount:** $80,000.00
**Attorneys' Expenses:** $1,078.00
**Settlement less Expenses:** $78,922.00 ($80,000.00 - $1,078.00)

**Requested Attorneys' Fees:** $26,307.00 ($78,922.00 / 3)
**Total payable to Attorneys:** $27,385.00 ($26,307.00 + $1,078.00)
**Total payable to Plaintiff:** $52,615.00 ($80,000.00 - $27,385.00)

      Our office and the Plaintiff have a retainer agreement that is reduced to writing and is signed by the Plaintiff. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

      This request for attorneys' fees is supported by the work performed by Plaintiff's counsel and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their client throughout the negotiation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV.   Closing

      In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of good faith negotiations between experienced and competent counsel with the assistance of a Court-approved mediator and the EDNY Mediation Program and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement in its entirety. We thank the Court for its consideration and remain available to provide any additional information.

      Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.